Good morning, Your Honors. May it please the Court, my name is Tony Santorelli. I would like to reserve one minute. Our firm was retained by petitioner after the BIA's decision. It was a one-paragraph decision which stated, We are not persuaded that the immigration judge's adverse credibility finding was clearly erroneous. Oh, you just got a Bourbano affirmance. Excuse me, Your Honor. You just got a Bourbano affirmance. Yes. Yeah. What concerns me most is that the adverse credibility finding in this case is clearly not supported by the record that you have before you. The most egregious error that the immigration judge committed is very subtle, but perhaps the most damaging to the petitioner. On page 80 of the official record, in the middle of the page, during the middle of direct examination, the judge goes off the record, and then one line down, he comes back on the record. However, Your Honors, at this juncture, I believe either the immigration judge forgot to turn back on the recording device, or there was a fundamental tape failure, because on page 80, the judge now addressing the government counsel states, Ms. Rosen asked. She responds. She says, I'm sorry, Your Honor. This is at the bottom of page 80. Just to be clear, none of what I have asked is on the record, correct? The judge, that's right. I told counsel that the tape was not recording. We played back what we had. Counsel stated she was through with her direct examination. I asked certain questions. Ms. Rosen asked questions, and my questions were not recorded. I believe that deference to the board and deference to the trial judge are fundamental rights. I think my colleague will argue that. However, if we send this case back or we review the board's decision, we must recognize that there was prejudicial error, because they were not able to review the entire record. There isn't like blank pages on the record, five, six, seven pages that say blank, because no recording was going on. There simply is no record from the middle of direct to sometime into cross. We don't know how much time. We don't know what happened. Is there any explanation at all about why the proceedings weren't being recorded? No, Your Honor. In fact, the judge just goes back to the government counsel and says, please proceed. And they went forward. Now, again, it would be easy to say, let's go back to that time frame and try to establish what was said by the respondent, but the credibility issue is paramount to this case. Our government counsel, Ms. Schwartz, will cite Farah v. Ashcroft to enunciate the extremely deferential standard of review applicable to this court in review of the factual determinations of the BIA, and I would normally say yes to that. However, in the one-paragraph BIA decision, they make no reference to anything other than they found no clear evidence of error in the credibility or lack thereof pointed out by the trial judge. If I may point out one other issue that goes to the credibility factor, which is an error of the immigration judge, if we look at page 92 of the official record, the IJ, immigration judge, is questioning the petitioner, saying, Why didn't you ever mention before today that the police, that the officials came to your house and threatened your wife about what will happen to you and why you should report yourself as soon as you're back home? The judge says that to him on the record at page 92. Justices, I call your attention to the very last page of the record, at page 184. This is the respondent's only declaration, which was attached to his only application for asylum, and he states, and this was dated January 30th of 03, Recently, I called my wife, pardon me, I called my family. My wife told me that the police had been to my home to search for me. The attitude was very bad. They notified my wife that once she learned that I would go home, she must report to the police station at once. They said I have absconded with guilt. My problems were serious. So, justices. I understand your point, that this statement, you're pointing us to on 183 and 184 was dated January 30th of 03, and he talks about in his testimony an episode that occurs after that, but the I.J.'s question is, why didn't you file a supplemental statement? That's to say, I.J. understands that the statement was done in January, and so he says, why didn't you give us some kind of supplemental statement? I'm just reading from what the I.J. said. Since this case has been before the immigration case, since it was filed back in March of 2003. And I think what the judge was stating at that point in the record was that he had never discussed it at all. He had never brought it to their attention prior to his trial date. Not that he had said something about January, but not the subsequent visit in February, because there were two visits to his home. No, no, I think we're then on the same page. The I.J. is saying, I understand I've got this statement in front of me in January. I understand this case has been with us for a long time. You had the opportunity to file a supplemental statement before you came into court and you didn't do it. Now, that might not be a very damning thing, I'll say it when I come to court, but I think the I.J. is understanding the sequence. And, Justice, if I may call your attention to page 48 of the official record, last full paragraph. It's my belief that that's not what the I.J. is saying. Okay. On page 48, last full paragraph, question. None of this information about anyone looking for you in China is in the application for asylum. None of it. I'm sorry, I'm not with you. Excuse me, Your Honor, I apologize. It's page 92 of the official record. Page 92. Last full paragraph. None of this information about anyone looking for you in China is in the application for asylum. And the question is, why isn't it in there, or why didn't you give us some kind of supplemental statement since the case? So the judge at this point is not saying, we have some information here, but why didn't you tell us about the second visit since you've had time? He's saying, you never told us that after you escaped, the police came to see you and came to threaten your wife. I think that's a clear difference from what Your Honor was saying. I think the judge at that point just didn't believe him, because it's a fundamental situation to somebody's life. If he leaves the country and then his wife is threatened by the police twice, he should have said something. I have a question. In your opening brief, you mentioned a letter from Deng's pastor at Glory Church. We couldn't find that letter in the record. Your Honors, may I please have the page on my brief? I don't know. I do not recall offhand. Okay. I think it's page 26. The IJ completely disregards in his assessment that Mr. Deng submitted to the court a letter from the pastor of his church, indicating that Mr. Deng had joined the church and is one of its regular members. Yes. There is a letter addressed in the record. However, I believe that counsel for the petitioner at that time had not properly translated the letter, and so the judge did not give it as much strength as it should have. It was discussed, but it was dismissed. I believe that's my answer to your question. But you say it's in the record? Where is it in the record? Your Honors, at this time I'm looking through my notes and I don't see it, so I apologize. Okay. I believe, if I'm reading this correctly, I have exceeded my time. Yes. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court. Excuse me. Nora Eskridge for the Attorney General. Counsel couldn't find the letter because it's not in the record, nor is there any discussion of the letter in the record. And I was blindsided by counsel's argument about the missing transcript, because this is the first time it's ever been discussed. It wasn't in his brief, it wasn't on appeal to the board, and this is precisely why these issues need to be exhausted, because if there was an error and raised to the board, then the board could have said, oh, yes, there is a mistake. Let's remand for a complete record. But that was never raised to the board and it was never raised in opening brief and it was never raised in reply brief. Did you represent the government before the IJ? I just got this case last week. But that would have been a DHS trial attorney. It is kind of unusual, though, for the IJ to turn off the letter in the middle of the direct examination. Not really, Your Honor. It's not been recording in the middle of the direct examination. Not really, because what happened here, it does not – there's no break in flow. She wanted to know the pastor of the church. There was some discussion of the spelling. And would you please write it down? Chinese characters are better. I don't think any of us can really say what was not recorded. Exactly, Your Honor, but that's the point. We can't speculate at oral argument for the first time what might or might not have happened. It's too late. And there is no – again, the board has to have the opportunity to correct any alleged error, but no error was alleged. I would also point the court to something that is in the record at page 213. What Petitioner claims is his summons to appear was dated May 15th, 2003, orders him to appear for interrogation on March 5th, 2003, which is what, two, three months before? And it is – his name isn't even on it. It's – the name on it is Chun-Mei Hsiao, which is no possible transliteration of Mr. Deng's name. And that lends doubt. Now, both supporting documents, the termination notice and the summons, were submitted for forensic examination. But because there was nothing to compare it to – Did the I.G. rely on this? The – this is – no, not specifically, Your Honor. It was just – Well, but aren't we required in evaluating adverse credibility findings to look at what the I.J. found as a basis for the adverse credibility findings? We can look at the record as a whole, and this is not an unexhausted argument. I'm sorry. I think the rule is that we look at the reasons the I.J. gives for finding someone not credible. And we – the government is not allowed to advance additional reasons in support of that. Or am I wrong about what the rule is? No, this is not – but this is not an exhaustion or waiver issue. This is a record, factual, evidentiary issue. I understand that. But am I misstating the law? It – no. Okay. But it is evidence which supports the immigration judge's doubts, even though he did not specifically mention it. But we can't – we can't consider it. Just like you're arguing we can't consider what Deng's counsel raised because he didn't raise it to the BIA. We can't consider what you just raised because it wasn't a reason given by the I.J. So why don't we go to the reasons given by the I.J.? Okay. Well, primarily, I think there is – there is evidence to – substantial evidence to support his decision. He – first of all, there's no – he left in November of 2002. He had two visits in January and February of 2003. Now, the immigration judge was concerned not because he didn't report the visits, but because he was unable to corroborate them. He had – and the immigration judge specifically said, did you ask your wife for a letter? And he said no. That was his entire answer. It's counsel on appeal who says, well, maybe he's afraid because – because the mail is intercepted. But that's counsel's argument, and the statements of counsel are not evidence. And this is a pre-real ID act, right? Pre-real ID, yes. Right. So the rule is corroborate – only corroboration that is, like, easily or readily available should be required. I thought it might even be a post-ID act. But he's not saying it's not readily available. Why couldn't he call his wife and say, send me a letter? He had an attorney who was experienced in immigration matters who spoke his language, who said prepare everything, as the IJ noticed, bring as much evidence as you can. He didn't bring any evidence that he attends church in the United States. He didn't bring a letter. He didn't – even though he's in contact with his wife, he doesn't bring any – a letter from his wife saying – describing the two visits. And that is easily obtainable. All he had to do was ask. But there is no evidence, even notwithstanding that, there's no evidence of any while the fact that the State Department reports say that the kind of incident he experienced does not happen, it doesn't mean it didn't. However, there's no objective evidence to indicate that it would happen again, that he couldn't practice his religion freely because now small house churches are allowed. And moreover, there's no evidence that he still practices Christianity anyway, except for his statement that he goes to church, but not even a letter from the pastor. Oh, and an untranslated Chinese document. But the fact is – You say there is an untranslated Chinese document? And I thought you said there was nothing in the record. There's no letter from the pastor, Your Honor. He brought a pamphlet. Oh, it's the pamphlet you're referring to when you say document. Yes. Now, I was puzzled, and you may or may not be able to help me with this. It was described in the transcript as having his name on it. Do we have any idea? You know, I'm a little bit flummoxed about that. Was it handwritten by somebody? I mean, what do you know? I have no idea. Again, it was not developed, and it's his burden of proof. I couldn't tell. Okay. But it was never formally translated, and I don't know why it wasn't translated at the hearing. They had an interpreter, and his attorney spoke Chinese. There's no reason for it, and again, it's not for us to speculate why. He hasn't carried his burden of proof on that issue. But again, there is no evidence. There's been no interest in him since 2003. There's no evidence that anyone would be interested in persecuting him in 2010 or 2011 or any time after that. Moreover, excuse me, I found it interesting that he wrote in his statement that December 24th, 2000 was a day he will never forget. December 24th is a day I can't forget on which I was baptized. In his testimony, however, it was in November of 2000. A month normally isn't a big difference, but when he makes such a strong statement like, it's a day I can't forget, and it's very specific as to the date, and then testifies to another date, that's a little bit suspect, and again supports the immigration judge's concern that these things really happened. He also testified that he was released on 3,000, we don't know if it's yen or dollars, bail after two weeks, and on the same page he says $8,000. That has never been challenged. And he came, again, he came to the U.S. in 2003. There were two visits to his house, and there is, the hearing was in 2005, and there was no evidence of any continuing interest in him. He admits that any interest that ever existed was strictly local, which is why he was able to get a passport, why he was able to leave the country without any hindrance. And he admits that he could go elsewhere, because he's not in the national, he doesn't think he's in a national database, which is why he could get the passport. But he thinks that that's not possible. Now, that's purely subjective. By his own testimony, he could move elsewhere. And according to the State Department reports, people are free to locate internally. There's no objective evidence that he couldn't and live safely elsewhere, if indeed he genuinely feared persecution in his local hometown over an incident that happened in 2001. I assume the judges are not troubled by the Borbono issue and the summary affirmants. Okay. And again, the thing is, it's, it's, it's, the whole veritarian Melendez principle, it, it, it's weak, it's full of holes, and it doesn't compel the conclusion that even if this did happen, he is likely, he is likely to suffer a few returns. You know, that's, I have a lot of problems with each of the reasons given for the average credibility determination. And it seems to me that what you're arguing is that he didn't need his burden of proof. I see what you mean. And, and, you know, I've seen this a lot with IJs, they'll find adverse credibility when really distort what he's saying. I mean, it sounds possible, but it's just not quite sufficient to prove that he was persecuted. And, but still the IJs will go back on the average credibility. And it's, it's, it's problematic. I think I, I mean, it'd be better if they just straight out said what you're saying, which is. It didn't make the burden of proof. Absolutely. Yeah. But in this case, it's not, there is, that would have been a stronger way to go, but in this case there still is substantial evidence to support the immigration judge's adverse credibility. He also would have been better if he'd mentioned demeanor because remember, this is his second. I know. I mean, this is not the strongest IJ decision. If it were perfect, Your Honor, we probably wouldn't be here. If I, if I, if you don't mind me detaining you another moment. This proceeding was instituted by an NTA after he overstays his B-1 visa. Yes, it was. His, his. I'm just setting this up. So that I think is true. And you agree that that's true? Yes. Okay. He did not come into the country saying, I want asylum. He had a B-1 visa. He overstays it. The government comes after him with an NTA. Yes. Do, is there any formal rule or presumption that we treat cases differently depending on whether someone is applying for asylum after an NTA is filed to commence proceedings or depending on whether they've come into the country and say, I want asylum? No, Your Honor. There's just the one-year bar. An inference may be drawn, but there is no statutory requirement other than the one-year bar. So, so there's, there's no formal presumption or anything else that happens as a result of that? Not that I'm aware of. Okay. But it is interesting to note that he did have two face-to-face opportunities with the asylum officer and then with the immigration judge, and he failed to convince either. And there's a, it's hard, it's hard for us to imagine because we don't see the grants, but there is at least a 50 percent grant of asylum applicant, asylum applications. And the failure here to make his case is telling. So, in conclusion, if the court has no further questions, I would submit that the immigration judge's decision is supported by the record and a contrary conclusion is not compelled. Thank you, counsel. Thank you. Just as I realized that I exceeded my time. You can have a minute. One minute? Yeah, the opposing counsel took two minutes over. As to the adverse credibility finding that the judge found, I'd like to point out on page 95 of the official record, the judge at the very top of the page is questioning the petitioner. And he states, unregistered churches are illegal. Prayer meetings and Bible study groups held in homes are legal and generally are not subject to registration requirements. He goes on. In some parts of the countries, unregistered churches with hundreds of members meet openly with full knowledge of the government. I believe at that point the judge is citing his own point. I call your attention to the China country report that's replete with specific information. And I will cite only one page, page 21. It's officially on the record. And it talks about crackdowns against unregistered groups, including underground Protestant and Catholic groups, continued and worsened in some locations. On page 22, leaders of unauthorized groups were sometimes the targets of harassment, interrogation, detention, physical abuse. What I'd ask your honors to consider, the petitioner was detained for 15 days. He was beaten. He was eventually released on 8,000 RMB bond that his wife paid. During the 15 days, he was never brought before a court of law. He was never given an opportunity to hire an attorney or one provided for him. He was simply sentenced to 15 days. When he was released, he was told, he was threatened, don't associate yourself with Christian organizations. In his mind, your honor, his testimony was that the home church was his Christian group. He had never attended an official church. His belief was that the official church was somewhat scary for him to attend because he would have to register his information, his home address. If anything ever changed and the government came down hard on Christian groups, official churches would be the first to go, in his opinion. He associated himself strictly with his home church. That's why, and the judge points out, why didn't you attend church for the last 11 months that you were in China? And his answer was, I didn't want to associate with my Christian group and be subject to arrest again. Your honors, he's been away from his family for eight years. He has a child that he hasn't seen. He has a wife that he hasn't seen for eight years. The record as presented to the board was not complete. I would ask you to give him a chance to go back and have, under due process, his proper day in court. Thank you. Thank you, counsel.
judges: Lynn, Wardlaw, Fletcher W.